713 So.2d 853 (1998)
Jesse VOLLMER, Plaintiff-Appellee,
v.
Sammy NOEL, Defendant-Appellant.
No. 98-23.
Court of Appeal of Louisiana, Third Circuit.
June 3, 1998.
Rehearing Denied July 8, 1998.
Anthony Jerome Fontana, Jr., Abbeville, for Jesse Vollmer.
Silas B. Cooper, Jr., Abbeville, for Sammy Noel.
Before THIBODEAUX, SAUNDERS and DECUIR, JJ.
THIBODEAUX, Judge.
This action arose out of a dispute involving the erection of a fence between contiguous properties. Jesse Vollmer, Jr. filed a possessory action against an adjoining landowner, Samuel Noel, claiming Noel disturbed his possession of a strip of land that the Vollmer family acquired by acquisitive prescription of thirty years. Noel judicially converted the action to a petitory action by asserting title to the disputed property. The trial court held that Vollmer and his ancestors in title openly and adversely possessed the land at issue, with the intention of possessing as owners, unequivocally and without interruption for the requisite thirty years. Noel suspensively appealed. We affirm.
I.
ISSUES
We must determine:
1. whether the prior fence line established the requisite visible boundary that is necessary to gain title by acquisitive prescription of thirty years; and
2. whether Vollmer's actions were sufficient to reasonably apprise the public and the record title owner of his intent to possess the land as owner.

*854 II.

FACTS
This appeal involves a strip of land located along the northern boundary of a tract of land owned by the Vollmers, located in the northeast corner of the southeast quarter of Fractional Section 8, Township 13 South, Range 3 East, in Vermilion Parish. The Vollmers' north line, which measures 1,909.95 feet and travels east and west, is also the southern boundary for property owned by Samuel Noel. The land at issue on this appeal is "v" shaped and measures 1.22 feet wide on its east end, 150 feet long on its north and south lines, and 3.5 feet wide on its west end. Jesse Jr. (Vollmer) owns a tract of land that measures 110 feet × 150 feet, which is located in the northeast corner of his family's larger twenty-one acre tract. He contends that the strip of land in dispute was wrongly encompassed by Noel when Noel erected a fence to the south of the property line that had been established by a barbed-wire fence which stood for nearly 100 years and served as the recognized boundary between the two properties.
It is uncontested that a barbed-wire fence previously formed the recognized boundary between the Noel and Vollmer tracts of land from the late 1800s until approximately 1986. A survey commissioned by brothers Jesse, Sr., Lawrence and Percy Vollmer in 1981 to partition their property shows the boundary between the two properties as it was established. It records the boundary as being a straight line running east and west between the entire length of the adjoining properties.
It was established at trial that the old, barbed-wire fence was overgrown with shrubs, brush and trees in sections, making it impossible to see the fence completely from one end to the other. Because of the overgrowth, the boundary line between the two properties that was recorded on the 1981 plat by civil engineer, Elray Schexnaider, was measured according to a parallel offset line approximately ten feet off of the original fence line.
Noel purchased the land adjacent to Vollmer's in the late 1980s after the majority of the barbed-wire fence had been torn down. Months after Noel purchased the property, he placed a plastic white pipe next to what he thought was his property line at its southeast corner, according to the location of a rod that appeared to him to be a survey marker. He proceeded to the southwest end where he found a corner post. He stated that most of the barbed-wire fence along the boundary line had already been removed, and that he proceeded to clear what remained of it and the brush that had been located along that line. As he approached the western boundary of Vollmer's 110 feet × 150 feet tract, he encountered a tree that held a tree house built by Vollmer's children. A portion of the old fence was still attached to the tree on its northern side. Noel claimed that he left the tree intact because Vollmer asked him to leave it and because it contained a tree house that had been built by Vollmer's children. Noel testified that he acquiesced and proceeded to build a boundary levee and stated that in an effort to be neighborly, he constructed the levee such that it would turn to the north when it reached the tree, so as to avoid it and other crepe myrtle trees located farther east that Vollmer had planted. During the construction of that levee, Vollmer claims to have stood over a survey marker that marked the location of the old fence line/boundary. Exhibit P-20 shows the two-inch iron pipe that was allegedly placed over the marker by the Vollmers at that time.
In 1996, Noel decided he would erect a fence marking his southern boundary. However, Vollmer disagreed with him about the location of the boundary. Schexnaider was contacted by the parties to reestablish the boundary. At trial, Schexnaider contended that he was able to relocate most of his original survey markers and the corner posts, thus verifying the 1981 survey. He testified that Vollmer's two-inch iron pipe located at the northwest corner of his lot, was actually 3.5 feet north of the 1981 survey rod that he was able to relocate at that location, and the original corner post at the northeast corner of the Vollmer property was 1.22 feet south of the pipe that Noel had placed there. Vollmer filed a possessory action after Noel erected his fence according to Schexnaider's results, and Noel converted *855 the action to a petitory action by asserting his title.
The issues at trial were whether that 1981 survey correctly identified the previously recognized boundary that had been established by the barbed-wire fence, and whether Schexnaider's 1981 plat coincided with the actual survey markers located along that boundary. The trial court made a number of findings of fact in its written reasons. The court found that there existed a fence separating the adjoining properties currently owned by Vollmer and Noel for more than thirty years; the fence was present in 1973 when Vollmer purchased his 110 feet × 150 feet lot by a cash sale from his father; and it served as a visible boundary, enclosing more land than Vollmer's title called for. The court further found that Vollmer and his ancestors in title satisfied the requirements for gaining ownership of that property via thirty years acquisitive prescription, as set forth in La.Civ.Code art. 794 and Williams v. Peacock, 441 So.2d 57 (La.App. 3 Cir.1983). In addition, the court held that Schexnaider's testimony confirmed that the 1981 plat did not reflect the area enclosed by the fence and that had been acquired by thirty years acquisitive prescription, but only showed the land the Vollmers had acquired by title. Further, he found that Vollmer continued to possess the property until the present time, and had not been dispossessed.
The court opined that although the fence no longer stood, it accepted the testimony of the Vollmers in establishing the location of the original fence along the northern property line as far as the western property line of Vollmer's 150 feet long lot, as represented in Exhibit P-5, a plat created in 1997 by surveyor Aldon Leblanc. The court ordered Noel to remove his fence and return Vollmer's property to its former state. Noel suspensively appealed.

III.

LAW AND DISCUSSION
The predominating issue in this case is whether Vollmer acquired the strip of land that is in dispute by acquisitive prescription of thirty years. This court set forth the applicable law in Humble v. Dewey, 215 So.2d 378 (La.App. 3 Cir.1968), as follows:
In order for a possessor to successfully claim the ownership of immovable property under a plea of thirty years acquisitive prescription, he must establish not only that there has been corporeal possession of the property for the required period of time, but also that there was a positive intention to take and commence possession of the property as owner.
(Citations omitted).
Once acquisitive prescription has been proven, the boundary shall be fixed according to limits established by prescription rather than titles. La.Civ.Code art. 794. "If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds." Id. As stated by this court in Williams, 441 So.2d at 60:
The requirements of these articles indicate that one must maintain an enclosure, such as a fence, around the property and exercise open, physical possession as owner for a continuous and uninterrupted period of thirty years. There must have been not only evidence of a corporeal possession of the property for the required period of time, but also a positive intent to possess as the owner shown by the possessor during the time. Finally, the tacking of possession of all predecessors in title is permitted for acquisitive prescription beyond title to a visible boundary.
(Citations omitted).
In the present case, the trial court applied the principles set forth in Williams, 441 So.2d 57, and found that the original fence was a visible boundary enclosing more land than Vollmer's title called for, and that Vollmer and his ancestors in title openly and adversely possessed the land up to the fence line with the intention of possessing as owner, unequivocally and without interruption for the requisite thirty years. Noel attacks the trial court's ruling on appeal by first asserting that the trial court erroneously found that the fence constituted the requisite public and unequivocal, visible boundary needed to gain title by acquisitive prescription. He argues that testimony presented at *856 trial established that the fence that separated the two properties was completely obscured from view because of shrubs and trees that had grown up along it and, therefore, was insufficient to prove unequivocally where the boundary was exactly located.
Our review of the record reveals that the trial court's finding regarding the visibility of the fence as a boundary is reasonably supported by the record and is not manifestly erroneous. To begin with, it is not true that the fence was completely obscured from view from one end to the other, as evidenced by photographs presented at trial. Exhibits P-1 and P-25 through P-28 clearly show the fence line as it existed in the early 1980s along Vollmer's 150 feet north line, which is where the disputed land is located. In addition, testimony presented at trial by numerous witnesses confirmed that the fence line was not visible in certain locations because of the overgrowth of small trees and shrubs; however, the portion of the fence along Vollmer's lot was not so overgrown that it was impossible to see the fence. Further, an uncontested fact in the record is the existence of crepe myrtle trees that are also located within the disputed strip of land, which were planted by Vollmer against the fence while it was still in place. The trial court found that the fence had existed for more than thirty years, and although the final remnants of the fence were torn down circa 1986, plaintiff and his ancestors in title have continued to possess the land to the south of that fence until the present time, and have not been dispossessed. The crepe myrtles serve as a clear indication of the boundary that had been recognized by these families for over thirty years.
The trial court was also satisfied with the testimony of surveyor Aldon Leblanc and his plat which confirmed the property description of Vollmer's lot as described in the cash deed from which he acquired the land from his father in the early 1970s. The plat conformed to the testimony concerning the location of the crepe myrtles along the south side of the fence line and the large tree that once stood and housed the Vollmer children's tree house, which was also located to the south of the fence. We agree that these natural markers served to show the location of the boundary that had been established and recognized for over thirty years by these families, and we find no disturbances in the Vollmers' possession for over thirty years.
Noel next argues that Vollmer did not show his intent to possess, as owner, the strip of land that is in dispute. Noel contends that Vollmer asked permission to maintain land that he now is claiming to have acquired by prescription. The record reflects that Vollmer asked permission to mow a portion of the levee that faced his property but that he knew belonged to Noel. The actual strip of land that is in dispute is not that which Vollmer sought permission to maintain. The record reflects that the Vollmers mowed a portion of Noel's levee because they wanted to keep snakes from crawling over it from Noel's rice field. The strip of land in dispute actually lies at the toe of the levee and is located to the south of the two-inch iron pipe, shown in P-20, that was placed there by Vollmer and his sons to mark the location of the original fence line, and to the south of the crepe myrtle trees that once stood along the southern side of the barbed-wire fence.
We find that the evidence in the instant case establishes that Vollmer intended to possess the subject property as owner when he commenced possession in 1972. The description of the 110 feet × 150 feet lot found in the deed transferring the land to him, coincides with the Vollmers' markers and with the location of the crepe myrtles and the tree, located near the western line of Vollmer's lot, to which the original fence had been tacked. All property to the south of these markers was maintained by the Vollmers for over thirty years, and these markers were sufficient to apprise the public and the adjacent landowner of Vollmer's intent to possess as owner.

IV.

CONCLUSION
For the aforementioned reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendant-appellant, Samuel Noel.
AFFIRMED.
DECUIR, J., dissents and assigns written reasons.
*857 DECUIR, Judge, dissenting.
In my opinion the trial court erred in recognizing adverse possession where there was no visible boundary, a fact admitted to by Jesse Vollmer and his uncle, Lawrence Vollmer, as well as Elray Schexnaider. In fact, Lawrence Vollmer testified the alleged whole fence line was overgrown with bushes and briars. Furthermore, Jesse Vollmer testified that he could not tell whether the old fence line was straight because it was overgrown with trees. La.Civ.Code art. 974 provides in pertinent part: "If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds."
Furthermore, the record reflects that Jesse Vollmer was not an "adverse possessor" as contemplated by La.Civ.Code art. 3436. According to the testimony of Jesse Vollmer and his son, Clay, Vollmer admittedly asked Noel's "permission" to mow the property in question and maintain it as part of his lawn. Additionally, Vollmer admitted that he never expressed to anyone the intention to take and commence possession as owner of the property at issue.
For the foregoing reasons, I respectfully dissent.